Beaver Gasoline Co., et al. *v.* Zoning Board of
the Borough of Osborne and the
Borough of Osborne.

Argued December 15, 1970, before President Judge BOWMAN and Judges CRUMLSH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*James W. Dunn, Jr.,* for appellant.

*William Howard Colbert,* with him *Robert A. Rundle* and *Wright & Rundle,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 19, 1971:

The individual appellants are the owners of a certain piece of ground which is zoned "C" Commercial in the Borough of Osborne, Allegheny County. On March 12, 1969, they entered into an agreement of sale with the corporate appellant, Beaver Gasoline Co., whereby Beaver agreed to purchase the aforesaid lot contingent upon the issuance of a gasoline service station building permit.

Beaver's application for a permit to erect a one-story masonry gasoline service station building was presented to the Borough Council on July 12, 1969. The Borough zoning ordinance, No. 186, specifically prohibits gasoline service stations in "C" Commercial Districts. Accordingly, the permit was refused and the Borough Secretary so advised Beaver on June 14, 1969. On June 25, 1969 Beaver appealed the Refusal and a hearing was held on August 1, 1969 by the Borough Zoning Hearing Board.

The minutes of that hearing disclose that the Board Chairman raised several questions relative to the appeal. Essentially, these questions involved three basic issues: (1) the qualifications of Beaver Gasoline as a

service station operator; (2) the relationship of traffic safety to the ordinance prohibition; (3) the existence of the prohibition and the appellant's knowledge thereof. However, Beaver and the Borough at that time agreed that the sole issue before the Zoning Hearing Board was the constitutionality of the ordinance. The only entry of record was a statement by the appellant setting forth for the purposes of the record its application and building plan. The Borough took the position that it need not explain the basis for the refusal. Hence, the record is devoid of further evidence.

On November 3, 1969, the Zoning Board upheld the refusal by concluding that the prohibition in the ordinance was binding. Petition for appeal to the Court of Common Pleas of Allegheny County was filed and granted November 10, 1969. The court after oral argument at which no evidence de novo was presented, denied the appeal. That order is now before this court under the provisions of Section 402 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. , No. 223, 17 P.S. §211.402.

The court below, relying on the principle that those who would challenge the constitutionality of zoning provisions must overcome a heavy presumption of their validity, found that Beaver had not presented sufficient evidence to meet the burden. In addition, the court found that an examination of the record and the ordinance supports the conclusion that the township had considered factors attendant to the health, safety and general welfare of its community when it enacted the service station prohibition. We do not disagree with the conclusion that the minutes of the zoning board hearing may indicate that the "C" Commercial prohibition was enacted in consideration of the health, safety and general welfare of the Borough residents. We hold that the court below erred in its findings that:

(1) the relationship to the health, safety and general welfare alleged by the Borough is sufficient to support a use prohibition and (2) Beaver failed in that it had not presented sufficient evidence to overcome the presumption of constitutionality.

"[T]he municipal power for zoning purposes absolutely to forbid a use in a particular district ordinarily presupposes the allowance or permission of the use in another district . . ." McQuillin, 8 *The Law of Municipal Corporations* §25.1196 (3rd ed., 1965 rev.) "[A] zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality." *Exton Quarries, Inc. v. Zoning Bd. of Adj.*, 425 Pa. 43, 228 A. 2d 169 (1967).

While the lot owned by appellants was situated in a "C" Commercial District making the "C" Commercial District prohibition applicable, we find it significant that gasoline service stations are either expressly or impliedly prohibited from all other use districts in the Borough by reason of other clauses in Ordinance No. 186. See also *Girsh Appeal*, 437 Pa. 237, 263 A. 2d 395 (1970). The prohibition in question excludes this business from the entire municipality and may under *Exton* require the most severe scrutiny by this court.

"This court has become increasingly aware that it is neither a super board of adjustment nor a planning commission of last resort. . . . Instead, the court acts as a judicial overseer, drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies. . . . The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly nec-

essary. For this reason, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it. . . .

"While recognizing this presumption, we must also appreciate the fact that zoning involves governmental restrictions upon a landowner's constitutionally guaranteed right to use his property, unfettered, except in very specific instances, by governmental restrictions. The time must never come when, because of frustration with concepts foreign to their legal training, courts abdicate their judicial responsibility to protect the constitutional rights of individual citizens. Thus, the burden of proof imposed upon one who challenges the validity of a zoning regulation must never be made so onerous as to foreclose, for all practical purposes, a landowner's avenue to redress against the infringement of constitutionally protected rights." *National Land and Investment Co. v. Easttown Twp. Bd. of Adj.*, 419 Pa. 504, 521-22, 215 A. 2d 597 (1965).

The presumption of validity "of most *restrictions* on property rights imposed by [zoning] ordinances . . . [is] . . . premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community." (Emphasis added). *Exton, supra* at p. 59. While it may in some instances be reasonable for a municipality to *"totally prohibit* [some] *legitimate* businesses" while permitting others, such a practice "cannot be premised on the fundamental reasonableness" which supports the presumption of validity of zoning regulations. (Emphasis added). *Exton, supra.* Indeed we know of no fundamental reasonableness attendant to the practice of discriminating between legitimate businesses for the purpose of prohibiting their use. "The constitutionality of [such] zoning ordinance . . . should be regarded with particular circumspection." *Exton, supra.*

*National Land* and *Exton* have both recognized the reasonableness of presuming that a zoning ordinance bears a reasonable relationship to the public health, safety, morals or general welfare, and therefore have upheld the presumption of validity of such ordinances. However, we do not believe *Exton* requires that we presume a *prohibitory* ordinance to bear a *"more* substantial" relationship to the police power than a *regulatory* ordinance. Indeed *Exton* held the existence of this "more substantial" relationship to be suspect.

Where a governmental regulation infringes upon the rights of the individual citizens of this Commonwealth, that governmental regulation should only enjoy a presumption of validity vis-a-vis the individual where there exists some fundamental and reasonable principle of governmental control which has been consistently demonstrated to bear sufficient relationship to the police power of the Commonwealth. The discrimination between legitimate businesses by prohibiting only certain ones without identifying with specificity the ends thereof is not supported by such a fundamentally reasonable principle. Therefore we cannot hold, nor do we believe the Supreme Court to have held, that such a prohibition must be presumed to be valid.

This is not to say that prohibitory statutes are not presumed valid. We recognize the presumption that the statute was intended to prohibit an illegitimate business. However, in the case before us the prohibited use is that of a gasoline service station. Such a business is capable of being regulated so that its operations are not inherently nor consequentially injurious to the general welfare. See *Sun Oil Co. v. Zoning Bd. of Adj.*, 403 Pa. 409, 169 A. 2d 294 (1961) ; *Appeal of Shell Oil Co.*, 18 Ches. Co. Rep. 270 (1970). Therefore, even if the municipal authorities or this court were to presume this ordinance prohibits an illegitimate business, it is

clearly rebutted by the case law. Moreover, we are not forsaking the presumption that this prohibition is based upon some relationship to the health, safety, morals or general welfare. The findings of the court below would show that as relates to traffic control this relationship does exist. We only hold that we cannot presume this relationship to be of *such magnitude* so as *to justify prohibition* of the general use.

The applicability of *Exton* depends upon the existence of three requisites: (1) Appellants' business must be "legitimate"; (2) the prohibition must be "total" as to the municipality; and, (3) the appellants' plans must conform to all other requirements of the zoning and building codes so as to permit the relief sought. Appellants must meet the burden of proof as to these factors.

Beaver has met this burden. As we have said previously, the legitimacy of gasoline stations is dependent upon their ability to function under regulation without causing injury to the community. The ability of gasoline stations as a class to function under proper regulation has been consistently recognized by our courts. *Sun Oil Co., supra.* We do not say that gasoline stations possess *per se* the ability to function under regulation in Osborne Borough. We say only that as a class of business they generally have this capability and are therefore a legitimate operation under *Exton*.

As to the second requisite, the ordinance as stated prohibits gasoline service stations totally in Osborne Borough.

Finally, Beaver's president for the record submitted the plans for the service station which would comply with all applicable Borough ordinances.

Accordingly, considering the three requisites, we find the appellant has adequately met his burden of proving that this ordinance is prohibitory within the meaning of *Exton*.

"Recent cases decided by [the Supreme] Court on the constitutionality of zoning ordinances have followed the procedure of considering a challenge to the constitutionality of a zoning ordinance as a whole without first exhausting the question of the constitutionality of the ordinance as applied." *Exton, supra* at p. 57. The initial question of constitutionality before us involves the prohibition of gasoline service stations as a class. The reasons for this prohibition must be examined as they relate to gasoline stations generally. Therefore it is of no moment whether the specifics of the applicants' plans are unobjectionable so long as the requested use is "a gasoline service station."

Where, as here, the prohibition's validity involves the equal protection of the prohibited business as well as those which enjoy the blessing of the municipality, the salient fact to be determined by the Court is the validity of the reasons advanced, by which the Borough Council justified the class prohibition. It is this factor which must be scrutinzed to determine if it supplies the "more substantial relationship" which *Exton* demands. As we held in *Daikeler v. Zoning Bd. of Adj.*, 1 Comm. Ct. 445 (1971), if the reasons advanced apply also to permitted uses, or if they can be alleviated by proper regulation of the use, they may not be used to support total prohibition.

This raises a perplexing problem: Which party has the *burden of presenting evidence* that this ordinance did or did not bear a more substantial relationship to the police powers of the Borough? Judge ROWLEY of the Court of Common Pleas of Beaver County spoke to this issue in *Ours Appeal*, 61 Mun. L. Rep. 80, 85 (1969): "We are aware of the fact that the burden is on those challenging the constitutionality of such legislation to establish that fact. However, we believe that where the legislative enactment must bear a 'more sub-

stantial relationship' to the public health, safety, morals and general welfare, then the property owner's burden is accordingly lightened."

We hold that the validity of the ordinance depends upon the finding by the Borough Council that gasoline stations, if established in that Borough would have caused undesirable effects upon the health, safety, morals and general welfare of *that* community, *and* that these undesirable effects are *not caused by other permitted uses nor are they capable of cure by regulation.* The only issue dependent upon evidentiary support was the existence and propriety of the Council's findings. Is it reasonable to expect the challenger of the prohibition to have the competence to produce the evidence necessary to support the Council's findings? Is it reasonable to expect him to expend his energy and money to uncover and relate the strongest reasons for the prohibition? Is it reasonable to expect the applicant to build a fortress which he is unable to conquer? To require him to be the moving party presenting testimony to support the prohibition would be unreasonable, time consuming, inconclusive, and confusing. And with what result? Does this not mean that the burden has shifted to the Council to patch up the defects in the challenger's case? We conclude that the result of this gyration is impractical. We believe that a careful reading of *Exton* and *Ours Appeal* allows no other conclusion than that the burden must rest with the Borough.

In *Exton,* the applicant did not attempt to speculate the reasons for enacting the ordinance. The township went forward with its reasons in an attempt to justify the prohibition. Are we to assume the township in *Exton* would have been successful in defending the ordinance by remaining silent in expectation that the applicant was required to present the evidence in support of the prohibition? Such an interpretation of *Ex-*

*ton* is clearly without merit. We must believe that the court placed the burden on the township.

In *Ours Appeal,* Judge ROWLEY noted that unlike in *Exton,* the township offered no evidence on the propriety of its prohibition. The applicant's only testimony was that his use would be properly operated and not detrimentally affect the township's welfare. We have said that while this testimony is relevant to establishing the applicability of *Exton,* it is not relevant to the question of the township's reasons for the prohibition until the Council's precise reasons have been established. Therefore, when the court concluded that the *township,* as in *Exton,* had "failed to sufficiently *establish* the need" for its prohibition, the only burden placed on the applicant was to prove that *Exton* was applicable. This was the "lightened" burden of which Judge ROWLEY was speaking and which we have held that Beaver has met. Both *Exton* and *Ours Appeal* lead to the inescapable conclusion that the *burden of bringing forward its reason for the prohibition* is shifted to the municipality.

The court below took notice of the statements in the minutes of the Zoning Hearing that the prohibition was justified by the potential traffic congestion. If this be the reason advanced by the township for its prohibition, it is insufficient in light of *Exton.* Unless it is determined that the congestion is caused by the density of businesses, our courts have held that traffic problems are properly the subject of police regulation and blanket prohibition is not a legally justifiable solution. See, e.g., *Sun Oil Co., supra.* We cannot speculate that traffic congestion will be any greater as a result of a gasoline station operation than from any other legitimate business or residential use.

In summary, we find the following: (1) the appellant has met his "lightened" burden of proving the ap-

plicability of the reasoning of *Exton* to the case before us; (2) the remaining issue of constitutionality is whether the Borough's reasons for its prohibition provide a "more substantial relationship" to health, safety, morals and general welfare without being arbitrary or discriminatory; and, (3) the Borough has failed to establish either legally and factually constituted reasons for its prohibition or, that they would properly provide the required relationship. Total use prohibitions, such as we find here are inherently discriminatory and therefore in violation of the Constitutional rights of the citizens of the municipality which create them. The courts of this Commonwealth should not and will not permit such an ordinance to exist without clearly substantiated proof of its relationship to the governmental police power. Since this prohibition has not been so substantiated, it must fall. Insofar as Ordinance 186 of Osborne Borough prohibits all gasoline service stations in that Borough, it is unconstitutional.

The order of the court below is reversed.

---

CONCURRING OPINION BY JUDGE MANDERINO:

I concur with the result of the majority opinion and most of its reasoning and approach to the citizen's relationship to his government when the constitutionality of an enactment is at issue. I do not agree, however, with the majority's conclusion that the "burden" on the issue of constitutionality shifts in some cases such as this one from the citizen attacking the enactment to the municipality.

This court has recently been concerned in various cases with the problem of "burdens" in relation to the issue of constitutionality of enactments. I think it important therefore, to attempt to reconcile certain conflicting truisms which have been clear in the law for a long time.

It is clear that a court, when considering the constitutionality of a law (either a legislative or municipal "law"), should begin with a presumption of the law's validity. It is also clear in the law that a court can declare a law unconstitutional "on its face." This occurs only when the law "violates the fundamental law clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation, in the minds of the court." *Bilbar Construction Co. v. Board of Adjustment*, 393 Pa. 62, 141 A. 2d 851 (1958).

These two well-established doctrines really appear to contradict one another. If a court is to presume the validity of every law when it is challenged as unconstitutional, how can it ever be that the law is clearly, palpably and plainly unconstitutional on its face?

The answer really involves an analysis of what a court is doing in relation to the validity presumption when it declares that a law is unconstitutional on its face for clear, plain, and palpable reasons.

When a court says that a law is unconstitutional because it is clearly, palpably, and plainly so, it is in effect stating that it needs no help from any party to conclude that the act is unconstitutional. How can a court do this? Simply because a court and its judges do not sit in mental vacuums. Judges sit in the courts of the land as experienced human beings with a general knowledge of life. This includes a general knowledge which all of us have concerning what human conduct can possibly be related to the health, safety, and morals of the community. The general knowledge of a judge makes it clear that certain laws which attempt to restrict the freedom of an individual can have no relationship to the health, safety, or morals of the community. It is such a relationship which *must* be present before the law can be considered constitutionally valid.

In the first instance then, when a law is before a court on a challenge of constitutionality, the court begins its thinking process with a posture that the statute was passed by a legislative body and that the court should, therefore, presume that the legislative body, in its wisdom, did find a relationship between the conduct prohibited and the protection of the health, safety, and morals of the community. This presumption must be present in the first instant of the judicial thinking process, since legislative bodies are not required, except in very broad purpose clauses, to list and outline all of the "legislative facts" which formed the foundation for the legislative belief that the enacted law had a specific relationship to the protection of the health, safety, and morals of the community.

But the court, in almost the same breath that it speaks of respecting the general wisdom of the legislative body, must not act as "judicial robots" with no general knowledge of people or of what is necessary to protect the health, safety and morals of the society. If the general knowledge of the judges causes them to look at each other in bewilderment and mystery as to how the prohibited conduct could possibly be related to the protection of society, the judges are in effect saying "Our general knowledge in its broadest sense makes it impossible for us to accept a rational relationship between the law in question and the protection of society. It is clear, palpable, and plain to us, as judges, that there is no relationship between the law before us and the protection of society." A court in that situation, must conclude, in the same breath with which it presumed validity, that the presumption falls in the face of its certainty that no relationship exists between the prohibited conduct and the protection of society. There can be no doubt that the legislature, or the enacting body, cannot constitutionally prohibit conduct unless

it is shown that the prohibited conduct of a free citizen is somehow related to the protection of the society.

A court is capable and must be capable of the kind of analysis outlined above even before it hears any reason from either party to the litigation as to the relationship between the prohibited conduct and the protection of the society. A court is in effect using its own knowledge to judicially notice that there is no relationship between the prohibited conduct and the protection of society, which is exactly the allegation made by the citizen in challenging constitutionality.

Thus a legislative enactment is presumed valid by a court until the court is convinced that there is no relationship between the prohibited conduct and the protection of society. In some cases, although these may be rare, the court is thus persuaded without any assistance from either party to the lawsuit. It is of course necessary that one of the parties to the lawsuit produce evidence so that the court can identify the law in question and the conduct of the citizen-litigant which has been prohibited by the law. Once this is done by the citizen-litigant, the court is always free to conclude that there is no relationship between the prohibited conduct and the protection of society.

Obviously, a court without assistance from either party to the litigation would very rarely conclude that there is no relationship between the prohibited conduct and the protection of society. Because that situation is rare does not mean that it cannot exist or has not existed.

A legislative enactment, for example, which prohibited one-family dwellings anywhere in the community, as part of a zoning ordinance which had a stated general purpose to provide an improved environment for the society, would certainly, in the present state of general human knowledge, be declared unconstitution-

al by a court. Can there be any doubt that this would be so even if neither party to the litigation had produced evidence as to the relationship or lack of relationship between the prohibition and society's health, safety and morals?. In order to establish a justiciable controversy, and avoid an advisory opinion, the court would require a citizen to allege the existence of the law and also that the citizen-litigant had been restricted in his freedom because of the law. The court then would address itself to the presumed validity of the law, but in the same instant, call upon the general knowledge of the judges to conclude that there is absolutely no relationship between the restriction prohibiting one-family dwellings and the protection of society.

If a court, however, has any doubt whatsoever, it should not allow the presumption of validity to fall on the basis of the court's own general knowledge. The court should not judicially notice that there exists no relationship between the prohibited conduct and the protection of society unless there is no doubt whatsoever in the court's mind. This occurs when it is clear, plain, and palpable to the court, without any doubt, that the required relationship does not exist.

Thus, when we say that one of two litigants has the burden of proving the unconstitutionality of an enactment, we are simply stating that if the court is uncertain as to the necessary relationship between the prohibited conduct and the protection of society, the party with the burden will not prevail and the legislative enactment will be considered valid. This does not mean that a court cannot be convinced of the lack of the required relationship as a result of its own knowledge. Thus, the party with the burden of proof, in rare cases, may have sustained that burden merely by bringing to the court's attention the existence of the law and

facts showing that the citizen-litigant's freedom has been restricted. His burden of proof is sustained because the court decides that within its general knowledge it has such facts that convince it that the required relationship between the law and the protection of society is not present.

In other words, the party having the burden of proof may sustain that burden with the proper "assistance" of the court, which uses its own knowledge of human affairs and which refuses to ignore that which appears to be clearly, plainly, or palpably unreasonable.

In this case, the citizen has produced evidence as to the existence of a law which prohibits gas stations in a given municipality. The citizen has also produced evidence that this law has restricted his freedom in the use of his property. The court can look at the face of the enactment and conclude that the presumed validity of a total prohibition of gas stations falls because the court can judicially notice the total absence of any facts in general human knowledge which would rationally sustain any valid protection of the society by the prohibition of gas stations.

Even though a court is in such a state of mind and the presumed validity has fallen because of the court's general knowledge of the lack of any rational relationship, the court should of course hesitate, and allow either side to the controversy to attempt to persuade the court that there is or is not a relationship between the prohibited conduct and the protection of society. The burden of proof however, does not shift from the citizen to the municipality. It always remains with the citizen. But this burden has been sustained when the court's general knowledge tells it that there is no relationship between the prohibited conduct and the protection of society. The municipality, of course, is free at all times to attempt to establish that there is a con-

nection. If the municipality fails to do so, the enactment is not declared unconstitutional because of the failure of the municipality to sustain any burden of proof. Rather the enactment is declared unconstitutional because the municipality presented no evidence to dispel the court's existing state of mind that there is no rational connection between the enactment and the protection of the society. In some cases, the court arrives at this state of mind because of its general knowledge and in other cases it arrives at this state of mind because of evidence which has been presented by the citizen. It makes no difference how the court arrives at the conclusion that clearly, palpably, and plainly there is no connection between the prohibited conduct and the protection of the society. The important thing is that the court has so concluded.

Sitting as a judge in this case and refusing to sit as a judicial robot in a mental vacuum, I can only conclude that my general knowledge of human affairs, in its broadest context, gives me no clue as to any rational basis which would call for the protection of society by the total prohibition of gas stations. In such a state of mind, I would have been open to arguments by the municipality that my general knowledge was in error. No such arguments were presented. There were statements made to the effect that a relationship did exist between the prohibition of gas stations and the health, safety, and morals of the community. Merely stating the conclusion, however, is not persuasive. Such a conclusion can be stated about any enactment. Reasons must be given to show what it is that society is protected from, or what welfare of society is promoted by the prohibition.

When a court from its own general knowledge knows that a particular activity can be conducted and is generally conducted in society without any adverse

effect on the health, safety, and morals of the community, it must declare a *total prohibition* of such activity within a given municipality as unconstitutional unless the court is persuaded by the particular municipality that *anywhere* in that municipality such activity would endanger the health, safety, and morals of that municipality. This was the thrust of *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A. 2d 169 (1967), where a municipality's total prohibition of quarries was struck down as unconstitutional, since the municipality did not persuade the court that there existed a rational relationship between the protection of its municipality and the people therein and the prohibition of quarrying. This is not to say that any burden has shifted from one place to another. The burden was and remained upon the citizen. But the burden had been sustained by the citizen when the court, using its general knowledge, clearly, palpably, and plainly could see no rational connection between the prohibited conduct and the protection of society.

In any lawsuit, the party that does not have the burden of proof always risks nonpersuasion of the ultimate tribunal if the party without the burden of proof remains silent or attempts to persuade the ultimate tribunal but fails to do so.

In this case, the Beaver Gasoline Company has sustained its burden of proof. The fact that it was aided by the knowledge of the judges themselves that a total prohibition of gas stations is not related to the protection of society does not matter. The total prohibition of gas stations in the Borough of Osborne was unconstitutional.

---

CONCURRING OPINION BY JUDGE KRAMER:

Although I concur with the majority opinion in its reasoning and ruling on total prohibition of use provi-

sions in a zoning ordinance such as is involved in this case, I would remand the case. Until the ruling in this case, Osborne Borough did not know that it had a burden to go forward with reasons for the prohibition.

I would give the municipality an opportunity to present its "reasons", if any, why the borough should be permitted to totally prohibit gasoline stations within its borders.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The majority today has attempted to circumvent the standards by which Pennsylvania courts determine the constitutionality of zoning ordinances under Article I, §1 of the Constitution of Pennsylvania and the Fourteenth Amendment to the Constitution of the United States. The majority has placed the burden on those enacting the ordinance to come forward with proof and establish the validity of the ordinance. In reaching this position, the majority relies principally on *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A. 2d 169 (1967). However, at page 58 of *Exton*, the correct test was reaffirmed when Justice ROBERTS wrote: "A challenge to the constitutionality of a zoning ordinance must overcome the presumption of its validity." *National Land and Inv. Co. v. Easttown Township Bd. of Adjustment*, 419 Pa. 504, 522, 215 A. 2d 597, 607 (1965).

In *Eller v. Board of Adjustment*, 414 Pa. 1, 198 A. 2d 863 (1964), the Supreme Court stated: "The principles which govern a constitutional attack upon a zoning ordinance once again have been recited in the recent case of *Anstine v. Zoning Board of Adjustment*, 411 Pa. 33, 36-37, 190 A. 2d 712, 714-15 (1963), from which we quote: 'The burden of proving clearly and unmistakably the unconstitutionality of a legislative

enactment is upon the person so asserting: Best v. Zoning Board of Adjustment, 393 Pa. 106, 141 A. 2d 606; Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A. 2d 587; Loomis v. Philadelphia School District Board of Education, 376 Pa. 428, 103 A. 2d 769; Flynn v. Horst, 356 Pa. 20, 51 A. 2d 54. Accompanying this burden is the rule that ". . . where the constitutionality of zoning ordinances has been attacked, we have presumed that the municipal [or township] legislative body acted with purpose to serve the public welfare and that all intendments are in favor of their action." Bilbar Construction Co. v. Easttown Twp. Board of Adjustment, 393 Pa. 62, 71, 141 A. 2d 851; Liggett's Petition, 291 Pa. 109, 139 A. 619; Whitpain Township v. Bodine, 372 Pa. 509, 94 A. 2d 737. The burden of proof in an attack on the constitutionality of a zoning ordinance, although heavy, can be maintained. . . .' "

It is elementary that a law or legislative enactment is presumed to be constitutional and the party who asserts that such is unconstitutional has the burden of proof. *H. A. Steen Industries, Inc. v. Cavanaugh,* 430 Pa. 10, 241 A. 2d 771 (1968). One seeking to show a statute or ordinance unconstitutional must carry a heavy burden. *Philadelphia v. Depuy,* 431 Pa. 276, 244 A. 2d 741 (1968); *Commonwealth v. Life Assurance Co. of Pennsylvania,* 419 Pa. 370, 214 A. 2d 209 (1965). In the recent case of *Atria, Inc. v. Mount Lebanon Township Board of Adjustment,* 438 Pa. 317, 325, 264 A. 2d 609, 613 (1970), the Supreme Court once again reiterated the standard: "As we stated in Eller v. Board of Adjustment, 414 Pa. 1, 198 A. 2d 863 (1964), the burden of proof in an attack on the constitutionality of a zoning ordinance is upon the person so asserting, and that burden is a heavy one."

Therefore, I must dissent from the majority's attempt to reverse the traditional and well-established

burden of proof requirement which has always been applicable to those making an attack on the constitutionality of a zoning ordinance. I would affirm the court below.

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

Of the zoning appeals pending before our Supreme Court and transferred to this Court when it was declared operational, this is the second case in which the controlling issue is the constitutionality of a local government zoning ordinance prohibiting absolutely a certain land use within its borders.

In this case the Borough of Osborne has by properly enacted ordinance established a rather simple scheme of zoning. It sets up two residential districts, which encompass over ninety percent of the borough and a small commercial district in a "corner" of the borough set off from the residential areas on two sides by a major thoroughfare and a small stream. The municipality, as indicated in the record, is an almost exclusively residential community comprised of lots in the "A" District of 12,000 square foot minimums and in the "B" District of 7,500 square foot minimums. Within both districts, only single family dwellings are permitted with the exception of churches, educational institutions, libraries, professional offices accessory to single family use, and accessory "on site" signboards of a specified size.

The "C" Commercial District allows a limited variety of uses[1] and specifically excludes gasoline service

---

[1] 1. Nursery-horticultural.
2. Apartments in connection with business use.
3. Professional or business offices, agencies, or studios.
4. Personal service shops, including tailor, barber, beauty, dressmaking, shoe repair, hand laundry, or similar shops.
5. Retail stores, shops for custom work or for making articles to be sold at retail on the premises.

stations, all industry, sale of intoxicating liquors, refreshment stands, lunch counters, tea rooms, restaurants, and commercial signboards having no connection with the permitted use.

The majority would have us conclude that such an ordinance and its zoning scheme is ". . . inherently discriminatory and therefore in violation of the Constitutional rights of the citizens of the municipality . . ." The majority finds such "inherent discrimination" not on the basis of any positive evidence of unconstitutionality but rather because of the failure of the Borough of Osborne to bring forth reasonable constitutional support in the record for its prohibitory ordinance.

Such a conclusion involves a "lightened" burden of proof for the attacking party in that he need not present persuasive evidence of lack of reasonableness in the questioned ordinance. Instead the borough must come forward with persuasive evidence as to the reasonableness of its own actions, in effect overturning the presumption of validity which traditionally attaches to properly enacted zoning ordinances, whatever their thrust. With such a dramatic departure from established zoning law, I cannot agree, although I appreci-

---

6. Offices of veterinarian and kennels.

7. Telephone, telegraph and express offices, railroad station or auto bus passenger station.

8. Any commercial use of the same general character as any of the above permitted uses when authorized as a special exception, but in no case may a building be erected, altered or used, or a lot be occupied or used for any trade, commercial use, or business that is noxious or offensive by reason or odor, dusts, smoke, gas, vibration, illumination, noise, or generation of excess traffic.

9. Accessory use on the same lot with, and customarily incidental to, any of the above permitted uses.

10. Commercial signboards not exceeding twenty (20) square feet in area used in connection with a permitted business on the property.

ate the majority's attempts to clear the air of imprecision in this troubled area of the law of zoning. As I have declared in my dissent from the majority opinion in *Daikeler v. Zoning Board of Adjustment of Montgomery Township*, 1 Pa. Commonwealth Ct. 445 (1971) (919 Transfer Docket 1970), "I cannot subscribe to the extreme position of a declaration of unconstitutionality absent some showing of . . . compelling reasons to overturn presumed validity." I continue to hold this view.

I do not take issue with much of what the majority says or with their reliance upon several key cases in this area recently decided by our Supreme Court. But the majority places too great emphasis on the fact that a gasoline station—as well as the other prohibited uses under the ordinance—are "legitimate" businesses. While I have no clear impression as to the requisites for such legitimacy from the majority opinion, I can generally agree that gasoline stations are not *per se* illegitimate, that is to say, inherently dangerous or nuisances as a matter of law. The majority indicates at least by implication that in proper circumstances inherently dangerous or "illegitimate" business operations may be prohibited by zoning ordinance but seems to retreat from this principle as to operations not strictly illegitimate but having the potential for danger in some circumstances. The general "legitimacy" of gasoline stations, to my mind, does not insulate them absolutely from the possibility of use prohibition without any regard to specific circumstances.

I must refer to language in a recent opinion from the Court of Common Pleas of Chester County referred to and relied on by the majority. By way of dicta, that court said: "There may be a municipality in some remote part of the State where the population is small and there are no main highways in which a

prohibition against gasoline service stations might be constitutionally permissible. We have no doubt but that such commercial activity may be prohibited in properly designated zones created by zoning ordinances and that the operation of such an establishment may be properly regulated in those areas in which such operation is permitted. We are well aware that such a business is unique in a number of ways. It usually operates not only during normal business hours but also during those times when the residents of the surrounding area may be engaged in relaxation or rest. It deals in highly volatile merchandise which, if not properly stored and protected, can create a hazard to the health and welfare of the surrounding community." *Appeal of Shell Oil Company and Charles H. Graham ex ux, and William Burke*, 18 Ches. Co. Rep. 270 (1970).

There are circumstances in which a gasoline station may be peculiarly inappropriate to a community and therefore be subject to stringent regulation or exclusion. The unique circumstances of each case determine whether or not the controlling ordinance is a proper and legal exercise of the police power. Osborne Borough's ordinance must be measured by its own circumstances. I have no inbred bias against gasoline stations but rather a deep concern for proper interpretation and examination of zoning law as it applies to a given set of facts. I urge upon us the doctrine of judicial restraint expressed in *National Land and Investment Co. v. Easttown Twp. Bd. of Adj., supra,* in that this Court should be loath to replace the first-hand knowledge of local officials with its remote point of reference. Before us we have a peculiar set of facts and circumstances which suggest the application of such judicial restraint.

The Borough of Osborne has been given certain zoning powers under the Borough Code of 1966, as

amended. The purposes for which zoning ordinances may be enacted are set forth therein as follows: . . . "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land . . ." 53 P.S. §48203.

The record provides ample evidence of the existing character of Osborne Borough. Most of the area within the borough boundaries is strictly residential. Along a thoroughfare—hardly a major highway—cutting east-west across the borough near its southern boundary, is a small commercial district. It includes the local railroad station, as it is transversed by Penn Central Railroad tracks, the municipal water works, and an existing veterinary hospital and kennel; the minimal balance of this very small district is the narrow wedge of land sought to be developed by the appellant. Such land is the only undeveloped land zoned commercial in the borough.

In prohibiting certain uses, the Borough of Osborne acted most reasonably in prohibiting certain uses, not because they were inherently dangerous or illegitimate uses but rather because of the peculiar characteristics of the surrounding community. Surely the Borough has fully satisfied even the "more substantial" relationship test set forth in the *Exton Quarries* case. For a total use prohibition to have constitutional support, the excluding ordinance must ". . . bear a more substantial relationship to the public health, safety, morals, and general welfare than an ordinance which merely confines that business to a certain area of the municipality." *Exton* at 60.

The majority worries that the appellant must bear an unconscionable burden in trying to guess at the

municipality's unstated purposes for enacting the use prohibition and therefore casts the burden of explanation and proof on such municipality. Such disruption of the usual burden of proof on the attacking party to overcome the presumed validity of an ordinance is both unnecessary and short-sighted. A careful reading of an admittedly spare record in this case amply reveals the residential character of the major portion of Osborne Borough and the peculiar character of the minuscule commercial district. While the enacting authority did not proclaim in testimony at the zoning board hearing its purposes in excluding certain uses, such expression of purpose is abundantly clear on the face of the record. The peculiar characteristics of the locale which every borough is mandated to consider in drafting zoning measures are the principal and substantial reasons for these use prohibitions. The president of the Borough Council stated in his answer to the notice of appeal: "It is specifically denied that Ordinance No. 186 of the Borough of Osborne is invalid and unconstitutional by reason of its prohibition of gasoline service stations in the commercial district. On the contrary, it is averred that the commercial district as defined in said Ordinance is very limited in its scope and permitted uses because of the very nature and location of the premises and area of the Borough so zoned. . . . It is specifically denied that the Zoning Ordinance of the Borough of Osborne is discriminatory in any manner and the prohibition contained therein against gasoline service stations is unfounded and has no relation to legitimate police power or the health, morals and general welfare of the community. On the contrary, it is emphatically averred, that all of these elements including the health, morals, and general welfare of this Borough were duly considered, weighed and evaluated in the course of the preparation

of the current Zoning Ordinance which, together with the *peculiar limitations afforded by the real estate itself in question* [emphasis supplied] dictated that, for the benefit of not only the community itself, but also those who visited and passed through would be jeopardized and endangered through careless and negligent allocations of permitted uses in this small and badly contoured area."

Such clear expression of purpose does not leave the attacking party unenlightened as to the purposes of the prohibition. The peculiarity of the land is adequately set forth as the basis for the use prohibition. Such a purpose surely comports with even the "more substantial" relationship test of reasonableness required by the *Exton Quarries* case in that certain uses are not appropriate to a small, irregular piece of land in an otherwise residential community. There are none of the compelling reasons which I discussed in my *Daikeler* dissent, which might require a conclusion of unconstitutionality. The majority has simply chosen to ignore the record and to picture the appellant as the victim of unwarranted discrimination. The facts and the record require a contrary conclusion and I therefore must dissent.