**Strasburg Associates v.
West Bradford Township**

*John C. Snyder,* for plaintiff.
*Robert B. Surrick,* for defendant.

SUGERMAN, *J.,* December 1, 1981—Before we delineate and discuss the issue involved in the instant zoning case, we recite the operative facts. Strasburg Associates (Strasburg) owns and operates a sanitary landfill in Newlin Township, Chester County, on a tract of land abutting the Newlin Township-West Bradford Township boundary. The landfill is utilized by independent haulers for the disposal of solid waste, and has been approved for such purpose by permit issued by the Department of Environmental Resources of the Commonwealth. The use of the landfill is also apparently in conformity with the ordinances of Newlin Township.

Although Laurel Road, a township road in Newlin Township and abutting the landfill would in the usual course provide access to the landfill, the road has been posted by Newlin Township so as to either completely prohibit trucks from traversing Laurel Road, or restricting the weight of trucks permitted to use the road. The limitations so imposed by Newlin Township have effectively prevented Strasburg's customers from entering the landfill from public roads in Newlin Township.

In an effort to resolve the problem, Strasburg acquired a tract of approximately 75 acres adjoining the landfill, in West Bradford Township (township). The tract is located entirely within the R-1 Residential Zoning District as defined by the Township Zoning

Ordinance. No commercial or industrial uses are permitted in the R-1 District.

Strasburg thereupon submitted a subdivision plan to the township, proposing to subdivide the 75-acre tract into two lots, one containing 11.29 acres and the other, 63.94 acres. In addition to the two lots, the plan contained a proposed road to provide access across the West Bradford tract to the landfill from Strasburg Road, a state road in the township. The board of supervisors of the township approved the subdivision plan on April 12, 1977, and the plan was duly recorded. Strasburg then obtained permits from the Pennsylvania Department of Transportation and the township, constructed the access road on the West Bradford tract, connecting Strasburg Road, in the township, with its landfill in Newlin Township, and on April 2, 1979, commenced to operate the landfill.

At the date the township approved Strasburg's subdivision plan, Strasburg and the township entered into a Subdivision and Land Development Agreement, later amended on May 23, 1978, wherein Strasburg agreed to assist the township in restricting truck traffic using the landfill access road to the use of four or five named roads in the township, determined by the township as more suitable for carrying truck traffic than other roads in the township. The agreement required Strasburg to enter into contracts with all customers using the landfill limiting such customers to the use of the named roads only.

On April 19, 1979, little more than two weeks subsequent to the commencement of operations at the landfill, the township commenced an action in equity against Strasburg alleging a breach of the agreement as the result of Strasburg's failure to obtain appropriate contracts with its customers

limiting such customers to the named roads. The township preliminarily requested injunctive relief against operation of the landfill until such contracts were obtained. On May 7, 1979, this court refused to grant a preliminary injunction, whereupon the township discontinued the equity action.[1]

In September, 1979, the township and a resident of the township filed complaints before a district justice against Strasburg, asserting that Strasburg was violating the zoning ordinance by permitting trucks hauling solid waste to traverse the access road in its subdivision in order to enter the landfill. The specific violation asserted was the use by Strasburg of land in a Residential Zoning District for commercial purposes.

Following a hearing, the district justice found Strasburg "not guilty" of violating the West Bradford Township Zoning Ordinance. The township appealed to the Court of Common Pleas and after hearing de novo, we reversed, finding that Strasburg had violated the zoning ordinance,[2] basing our decision upon our inability to distinguish the facts instantly from those underlying the decision of the Supreme Court in Atria, Inc. v. Mount Lebanon Township Board of Adjustment, 438 Pa. 317, 264 A. 2d 609 (1970).

Thereafter, on or about September 22, 1980, the board of supervisors of the township, apparently

---

1. Following discontinuance of its action, the township lodged a complaint or "appeal" before the Environmental Hearing Board, apparently seeking enforcement of the Subdivision and Land Development Agreement by the Department of Environmental Resources as a condition of Strasburg's landfill permit. This matter is yet pending.

2. Our decision is presently on appeal in the Commonwealth Court of Pennsylvania, docketed at 3167 C.D. 1980.

without notice or opportunity for hearing, adopted a resolution purporting to revoke its approval of Strasburg's subdivision plan earlier approved by the board on April 12, 1977. Strasburg appealed from the action of the board and the appeal is pending in this court.[3]

On or about July 24, 1981, the township notified the principal customers of Strasburg in writing that the zoning officer of the township was under instructions to cite all such customers who utilized the private road in the township to gain access to the landfill as being in violation of the Zoning Ordinance of the Township. The township also advised such customers that the use of the access road for commercial purposes was not a permitted use in a Residential Zoning District. The township included in the notice an excerpt from its zoning ordinance providing that violators are subject to a fine of as much as $500 and that each day a violation continues constitutes a separate violation.

Strasburg and several of its principal customers thereupon filed a complaint in equity seeking a permanent injunction against the township and its zoning officer, restraining both from issuing citations against Strasburg and its customers or otherwise attempting to enforce the provisions of the zoning ordinance as against them. Strasburg and its customers also filed a petition for a preliminary injunction seeking the same relief pending a full and final hearing on the request for a permanent injunction.

This court convened a hearing on the request for a preliminary injunction and following the hearing, we preliminarily enjoined the township from issuing citations against the customers of the landfill

---

3. Docketed here at no. 319 October term, 1980.

using the access road. At the same time, consistently with our earlier finding, we refused to enjoin the township against citing Strasburg for violations of the zoning ordinance.

The township has appealed our entry of the preliminary injunction restraining it from citing the customers of the landfill as being in violation of the zoning ordinance, and pursuant to Pa.R.A.P. 1925(b), we write in support of our Order.[4]

It is beyond cavil that a preliminary injunction may only be granted where the rights of plaintiff are clear, the need for relief is immediate and injunctive relief is necessary to avoid injury that is irreparable and cannot be compensated for by damages: Hospital Association v. Com., Department of Public Welfare, _____ Pa. _____, 433 A. 2d 450 (1981); Mazzie v. Com. of Pennsylvania, _____ Pa. _____, _____, 432 A. 2d 985, 987 (1981).

As the Supreme Court iterated in Valley Forge Historical Society v. Washington Memorial Chapel, _____ Pa. _____, 426 A. 2d 1123 (1981):

"The essential prerequisites for issuance of a preliminary injunction have been set forth as follows:

. . . first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct: Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp., supra. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is rea-

---

4. Strasburg has not appealed from our refusal to enjoin the township from citing it.

sonably suited to abate such activity. And unless plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: Keystone Guild, Inc. v. Pappas, 399 Pa. 46, 159 A. 2d 681 (1960), and Herman v. Dixon, 393 Pa. 33, 141 A. 2d 576 (1958).

John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc., 471 Pa. 1, 7, 369 A. 2d 1164, 1167 (1977), citing Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 181, 207 A. 2d 768, 770 (1965)." Id. at ____, 426 A. 2d at 1128.

We address these prerequisites seriatim.

(1)

Irreparable Injury and Need For Immediate Relief

At hearing, Wayne Lynn, employed by the Department of Environmental Resources as a regional solid waste manager, testified that in addition to the Strasburg landfill, there is only one other landfill in all of Chester County serving the public, located in the northwest corner of the county. Lynn testified that there are several landfills in adjoining Montgomery County, one of which refuses to accept solid waste from any customers other than Montgomery County municipalities, and no landfills in adjoining Delaware County. Lynn also testified that the Strasburg landfill was the only facility in Chester County permitted by the Department of Environmental Resources to receive sludge generated by sewage treatment plants.

The manager of the Downingtown Regional Water Pollution Control Center, a sewage treatment plant serving the Borough of Downingtown and four neighboring townships,[5] testified that the plant was able to store sewage sludge for two days at most;

5. 35,000 to 40,000 persons are served by this facility.

that if the sludge were not removed within two days, the treatment of sewage would cease; that the cessation of treatment would result in the immediate pollution of the Brandywine stream with raw, untreated sewage; and that the Borough of West Chester draws its public water supply from the Brandywine, downstream from the plant.

Joseph Blosenski, owner of Blosenski Disposal Company and a customer of the landfill, testified that his company serviced the sewage treatment plant, removing the sludge generated by that facility, as well as solid waste from Chester County customers generally. Blosenski testified that if he were denied access to the landfill he could not continue to service his customers in the same fashion without adding additional equipment and manpower at prohibitive expense. Blosenski also testified that even with additional equipment and personnel, solid waste removal from all customers would be delayed one or two days permanently.

Dennis Carlson, director of operations for the City of Coatesville, Chester County, testified that the city trash collection service utilized the landfill; that the rate charged the city residents for trash collection was fixed for the year, and the city was bound by the rate; and that if required to utilize the other landfill in Chester County, the city would incur increased costs that could not be met from current revenues.

Frank Rodgers, a customer of the landfill and owner of Main Line Disposal Company serving 700 to 1,000 customers in Chester County, testified that if cited by the township for violating the zoning ordinance, he would also be required to purchase additional equipment and employ additional drivers; that he could not obtain the equipment for six months to one year; and that even with additional

equipment and drivers, he would not be able to service all his customers.

Finally, Jack Hines, the township manager, the only witness produced by defendants, testified that he had received complaints from township residents concerning the use of township roads by trucks of customers of the landfill.

The general tenor of the testimony of plaintiffs' witnesses gave rise to the clear implication that unless the township were enjoined from citing the drivers of trucks using the landfill, the disposal of solid waste generated in all of Chester County would have been seriously impeded and adversely affected, giving rise to an immediate hazard of unknown proportion.[6]

It is equally clear to us that to permit the township to continue issuing citations would have resulted in immediate and irreparable injury that could not be compensated by damages. It is finally clear that the impact upon the landfill's customers, including the named plaintiffs would be immediate and severe.

### (2)

### Greater Injury By Refusing Injunction and Maintenance of Status Quo

It is also perfectly obvious from the record that the only "injury" that might occur as the result of the grant of the preliminary injunction will be in the form of unspecified road deterioration and continued complaints from township residents concern-

---

6. We may also consider harm to the public when addressing the question of whether to grant a preliminary injunction: Valley Forge Historical Society v. Washington Memorial Chapel, supra 426 A. 2d at 1129; McMullan v. Wohlgemuth, 444 Pa. 563, 281 A. 2d 836 (1971).

ing traffic conditions. On the other hand, as we have earlier observed, the failure to grant the injunction would in all likelihood have immediately disrupted the collection of solid waste in Chester County from literally thousands of customers, including the City of Coatesville and the Downingtown Sewage Treatment facility. We find that on balance, far greater injury would have resulted from the failure to grant the preliminary injunction.

A preliminary injunction should also restore the parties to the status existing immediately prior to the alleged wrongful conduct, and the status quo to be maintained by the preliminary injunction is the last actual, peaceable and lawful non-contested status which preceded the pending controversy: Valley Forge Historical Society v. Washington Memorial Chapel, supra; Com. v. Coward, 489 Pa. 327, 341, 414 A. 2d 91, 99 (1980). The very statement of the rule in the context of the facts before us convinces us that the grant of the preliminary injunction does indeed restore the status quo. The landfill's customers freely utilized the access road from the time it opened with the full knowledge and apparent approval of the township. That status has been restored.

### (3)

### Plaintiffs' Right Must be Clear

We must finally consider the question of whether plaintiffs' right is clear and the wrong manifest: John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc., 471 Pa. 1, 369 A. 2d 1164 (1977).

Additionally, while it is correct to observe that zoning regulations concern the physical use to which the land is put, County of Fayette v. Cossell, _____ Pa. Commonwealth Ct. _____, _____, 430

A. 2d 1226, 1228 (1981); Sears Roebuck and Co. v. Power, 390 Pa. 206, 134 A. 2d 659 (1957), we do not find that the use of private road at bar by customers of the landfill is an activity that is properly regulated by a zoning ordinance.

The township relies upon Atria, Inc. v. Mount Lebanon Township Board of Adjustment, supra, as authority for its position. In Atria, the landowner owned and operated a combination grocery store, tavern and restaurant in a zoning district designated as Neighborhood Shopping. The landowner's use was a permitted use in the Neighborhood Shopping District. The lot upon which the structure was erected fronted on a major highway and ingress and egress to and from the parking area on the lot was somewhat difficult by reason of the high-speed traffic upon the highway.

One of the officers of the landowner owned a dwelling on an adjoining lot upon which was located a private driveway. The latter lot fronted on a residential street and was in a residential zoning district in which commercial uses were not permitted. In order to alleviate the problem created by the traffic on the major highway, the landowner requested the permission of the township to use the private driveway in the residential district so as to permit vehicles to gain access to the parking lot in the Neighborhood Shopping District from the residential street. The township zoning board of adjustment refused to permit such use on the grounds that (1) the landowner could gain vehicular access from another less traveled street across its own commercially zoned property, (2) granting the landowner's request would result in a greatly increased flow of commercial traffic through a residential area, and (3) such use would "affect in-

juriously" the property values on the residential street.

On appeal the Supreme Court stated the issue:

"This Court has never decided whether a private driveway in a residential district may be used by the public in connection with a parking lot serving a business in a commercial district without violating the ordinance that restricts activities in the residential district to non-commercial ones." Id. at 321-22, 264 A. 2d at 612.

The court first noted that an examination of cases from other jurisdictions supported the view that land used as a means of access to, or for the parking of vehicles of patrons of a business, is a use accessorial to the business and thus, is itself in legal contemplation being used for the business purpose in question.

The court then decided on the facts before it that the proposed use of the driveway was commercial and not permitted under the zoning ordinance: Id. at 325-26, 264 A. 2d at 612-13.

While the principle enunciated in Atria may apply to Strasburg, as owner of the road in question,[7] we do not find the principle applicable to patrons of the landfill. Rather, we consider the township's action in citing the landfill's customers as an attempt to regulate traffic by use of the zoning power. While it is correct to observe that Section 604 of the Pennsylvania Municipalities Planning Code[8] provides that protection of the public safety and the prevention of congestion in travel and transportation are

---

7. We need not, and thus do not reach this question.

8. Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10604.

proper considerations in designing a zoning ordinance,[9] it is equally correct to note that the zoning power is not boundless and may not be used to regulate and control the use of public roads in a municipality. The record before us makes clear, and the township does not deny it, that the sole objective in citing the drivers was to prevent heavy waste disposal trucks from using the public roads in the township.

The power of a second class township[10] to regulate traffic derives from the police power vested by the state to secure the safety of persons or property within the township: Hardee's Food Systems v. Department of Transportation, ____ Pa. ____, ____, 434 A. 2d 1209, 1211 (1981) (collects cases). See Act of 1933, May 1, P.L. 103, art. VII, § 702, cls. XLVI and IX, as amended, 53 P.S. § § 65747, 65709. The power

---

9. Section 604 provides:

"The provisions of zoning ordinances shall be designed:

(1) *To promote, protect and facilitate one or more of the following:* the public health, safety, morals, general welfare, coordinated and practical community development, proper density of population, civil defense, disaster evacuation, airports, and national defense facilities, the provisions of adequate light and air, police protection, vehicle parking and loading space, *transportation,* water, sewerage, schools, public grounds and other public requirements, as well as

(2) *To prevent one or more of the following:* overcrowding of land, blight, danger and *congestion in travel and transportation,* loss of health, life or property from fire, flood, panic or other dangers. Zoning ordinances shall be made in accordance with an overall program, and with consideration for the character of the municipality, its various parts and the suitability of the various parts for particular uses and structures." (Emphasis added.)

10. We judicially notice that West Bradford Township is a township of the second class.

is limited by the Vehicle Code, Act. of 1976, June 17, P.L. 162, No. 81, §1, et seq., 75 Pa.C.S.A. §§6109, 6122, but we observe that Section 6109 of the latter act specifically permits municipalities to exercise these powers:

"[§6109. Specific powers of department and local authorities]

  (a) Enumeration of police powers.—. . .

• • •

  (7) Prohibiting or restricting the use of highways at particular places or by particular classes of vehicles whenever the highway or portion of the highway may be seriously damaged by the use or the movement of the vehicles would constitute a safety hazard.

• • •

  (13) Prohibiting or regulating the use of designated streets by any class or kind of traffic."

And as the Commonwealth Court said in Beaver Gas Co. v. Zoning Board of Borough of Osborne, 1 Pa. Commonwealth Ct. 458, 275 A. 2d 702 (1971):

" . . . our courts have held that traffic problems are properly the subject of police regulation and blanket prohibition is not a legally justifiable solution . . . " Id. at 469, 275 A. 2d at 706.[11]

"Blanket prohibition" by the use of its zoning ordinance is precisely the result sought and nearly achieved by the township at bar.

---

11. Other jurisdictions agree. See, e.g., Grate v. Township of Springfield, 117 N.J. Superior 130, 283 A. 2d 768 (1971); Cole v. Zoning Board of Review of City of East Providence, 179 A. 2d 846 (1962); Pure Oil Division of Union Oil Co. v. City of Brook Park, 26 Ohio App. 2d 153, 269 N.E. 2d 853 (1971); City of Syracuse v. Bronner 133, N.Y.S. 2d 153 (1953); Huntley Estates, Inc. v. Town of Eastchester, 121 N.Y.S. 2d 504 (1953).

Certainly a municipality need not await helplessly as its roads and highways are destroyed by heavy trucks. The Vehicle Code, however, is the appropriate means available to the township to regulate traffic upon its thoroughfares and not the zoning ordinance. We find plaintiffs' right to relief clear.