Nevil Estate.

Argued January 20, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James M. Marsh,* with him *Robert E. Cusick, Joseph G. Manta,* and *LaBrum and Doak,* for Pennsylvania Society for the Advancement of the Deaf, appellant.

*William Taylor, Jr.,* for Pennsylvania Federation of the Blind, appellant.

*H. Ober Hess,* with him *Peter M. Mattoon,* and *Ballard, Spahr, Andrews and Ingersoll,* for Pennsylvania School for the Deaf and Overbrook School for the Blind, appellees.

*Cuthbert H. Latta,* for trustee, appellee.

*James L. Price,* Special Assistant Attorney General, with him *Charles A. Woods, Jr.,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, March 17, 1964:

George W. Nevil (testator), died on October 29, 1930. By his will, his residuary estate was left in trust to Girard Trust Company (now Girard Trust Corn Exchange Bank) (trustee), ". . . to pay out of the net income thereof as follows: (1) To [a presently surviving life tenant] . . . Seven thousand dollars monthly so long as she shall live . . ., and after her death the principal of the said estate, upon which she has been receiving the said monthly sum shall become a part of my residuary estate. (2) To establish and maintain an Asylum for the deaf, dumb or blind, to be known as the 'Nevil Asylum for the Deaf, Dumb or Blind'—the said net income to be allowed to accumulate until it reaches a sum sufficient, in the judgment of the . . . [trustee], to establish and maintain such asylum and the support of the same thereafter to be paid out of the income." Thirty odd years later, the asylum has not yet been established.

On March 6, 1961, the trustee's fourth account[1] was called for audit in the Orphans' Court of Delaware County. At the audit,[2] the trustee, through its counsel, stated that, after an investigation and study of the possibility of then establishing an asylum for the deaf, dumb or blind, it had concluded: (a) the establish-

---

[1] This account showed original principal of $5,748,779 and accumulated income of $3,379,347. As of March 1, 1961, the market value of the trust assets was $10,370,704.

[2] The Attorney General, in his capacity of parens patriae, was duly represented.

ment at that time of such an asylum was not practical; (b) even if it were practical, the available funds were not sufficient for the purpose; (c) as to whether such an asylum should ever be established, such decision should be deferred until a future time; (d) in the meantime, part of the accumulated trust income should be immediately put to work in the areas in which testator had indicated his interest. The trustee recommended that grants be made from the accumulated trust income to the Pennsylvania School for the Deaf[3] and the Overbrook School for the Blind.[4]

After taking considerable testimony, the court concluded that it was not practical at the time to establish the asylum and, by application of the cy pres doctrine, approved the following grants from the fund: $1,288,100 to the Pennsylvania School for the Deaf for building and equipping a new vocational school building and equipping a library, and $1,121,000 to the Overbrook School for the Blind for building and equipping a new field house, a library and an educational museum.[5] With the trustee's recommendations and the court's conclusion the Attorney General agreed.

To the decree nisi entered by the court exceptions were filed by the Pennsylvania Federation of the Blind (Federation).[6] On May 11, 1961, as the result of a conference between the Attorney General and representatives of the trustee and the Federation, it was agreed the Federation's exceptions would be withdrawn and that "in the future when any cy pres pro-

---

[3] A private, residential school for deaf children in the Mt. Airy section of Philadelphia.

[4] A private, residential school for blind children in Overbrook, Pa.

[5] The projects were named as memorials to testator.

[6] The Federation does not operate an institution for the blind. As described by its counsel at oral argument, it is sort of a "civil liberties union" to protect the blind generally.

ceedings in the Nevil Estate are instituted, full, complete and timely notice shall be given to all institutions and organizations of and for the blind which are then in existence, so that the boards and the staffs of such institutions and organizations may have ample opportunity to present their respective views to the Court, the trustee and the office of the Attorney General." The court directed a notation be placed on the docket of the terms under which the Federation's exceptions were withdrawn and, on May 17, 1961, a final decree confirming the account and distribution was entered.

Almost one and one half years later, the Pennsylvania Society for the Advancement of the Deaf (Society),[7] petitioned for a review of the final decree. The principal thrust of this petition is that, inasmuch as the trustee at the audit proposed to seek court approval, by application of the cy pres doctrine, of a partial distribution of the accumulated charitable trust income, the trustee was under a duty, which it failed to perform, to give notice of the audit to all persons and organizations, including the Society, having an interest in the matter. The trustee, by preliminary objections, demurred on the ground such notice was not required. The Attorney General, by preliminary objections, raised the same question and also questioned the Society's standing to present the review petition. The court below sustained the preliminary objections, dismissed the review petition and refused the Federation's request to embody in a decree or order the agreement of May 11, 1961.

Both the Society (No. 33 January Term 1964) and the Federation (No. 40 January Term 1964) appeal from the decree.

---

[7] The Society for over 60 years, first at Doylestown and later at Torresdale, has maintained a "Home for Aged and Infirm Deaf and Blind".

## Appeal of the Society

The Society on this appeal contends that (a) it was legally entitled to notice of the audit of this charitable trust and (b) the court below abused its discretion and committed legal error (1) in diverting to the two schools trust income accumulated under the will for the establishment of an "asylum" without requiring notice to be given to others than the Attorney General, without appointing a trustee ad litem for the "asylum" and a master to investigate the propriety of these cy pres awards to substitute charities and (2) in dismissing without hearing, the review petition.

Notice of the audit of a trustee's account must be given every "unpaid claimant" who has given written notice of his claim and "every other person known to the accountant to have an interest in the estate as beneficiary, heir or next of kin" (Fiduciaries Act of 1949, P. L. 512, §§703, 983(1), 20 P.S. §§320.703, 320.983(1) and "to every other person of whom the accountant has notice or knowledge who claims an interest in the estate as beneficiary or next of kin" (Supreme Court Orphans' Court Rules, Rule 3, §6). It is obvious the Society does not fall within the class to whom notice must be given either under the statute or court rule.

However, the Society urges that, because the charitable trustee proposed at audit to make grants from the accumulated trust income, by application of cy pres, to substituted charities, the Society, as an agency devoted to aiding the blind and deaf and possessing expertise in such field, was a party in interest in the proceedings to whom notice should have been given. The Society points to no authority—statutory, court rule or decisional—in support of its position. The latest statutory enactment on the subject of the application of cy pres requires notice *only* to the Attorney

128

General.[8] None of the prior acts[9] dealing with cy pres require notice to parties occupying a status such as that of the Society.

The reason that notice is not required to be given parties such as the Society is clear; the Attorney General acts for and on behalf of all such parties and the public where the trust is for a charitable purpose. In *Pruner Estate*, 390 Pa. 529, 531, 136 A. 2d 107, we said: "The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trusts accrue. But because the public is the object of the settlors' benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement. Consequently the Commonwealth itself must perform this function if charitable trusts are to be properly supervised. The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his parens patriae powers." See also: *Garrison Estate*, 391 Pa. 234, 137 A. 2d 321. In *Bolster v. Attorney General*, 306 Mass. 387, 28 N.E. 2d 475, 476, the Court, speaking of a party who sought to appeal from a decree in a charitable trust proceeding, said: "Simmons College was under no duty or responsibility as to the disposition of the fund . . . . As an institution that hoped to be the beneficiary or active agency of the application of the cy pres doctrine, Simmons College had no legally recognized private interest in the disposition of the fund. It had no interest different in kind from that of the public generally, which is rep-

---

[8] Estates Act of 1947, P. L. 100, §10, 20 P.S. §301.10, which is presently inapplicable since it applies only to conveyances after January 1, 1948.

[9] Act of 1855, P. L. 328, 10 P.S. §13; Act of 1876, P. L. 211, 10 P.S. §15; Act of 1885, P. L. 259, 20 P.S. §196; Act of 1889, P. L. 173, 10 P.S. §14; Act of 1895, P. L. 114, 10 P.S. §13.

resented exclusively by the Attorney General."[10] That the Attorney General, rather than various individuals or organizations or agencies, should act for the public in the supervision of charitable trusts is based on sound reason and authority.[11] As this Court said in *Buck Mountain Coal Company v. Lehigh Coal & Navigation Co.*, 50 Pa. 91, 99 :[12] "The reason is, that if one individual may interpose, any other may, and as the decision in one individual case would be no bar to any other, there would be no end to litigation and strife. The general laws of order so necessary to good government forbid anything like this."

The Society has no standing or status as would entitle it either to notice of the audit or to challenge in any manner an order or a decree rendered in proceedings concerned with this charitable trust. Absent any such interest or status, the Society cannot be heard to complain of any alleged error of law or abuse of discretion on the part of the court below. Accordingly, its appeal must be dismissed.

In view of the conclusion reached, we need not consider other contentions of the Society.

---

[10] See also: *Wiegand v. Barnes Foundation*, 374 Pa. 149, 155, 97 A. 2d 81; *Averill v. Lewis*, 106 Conn. 582, 138 A. 815; *Ware v. Cumberlege*, 20 Beav. 503; *Smith v. Kerr*, 74 L.J. Ch. 763. Cf. *Atlee Estate*, 406 Pa. 528, 178 A. 2d 722.

[11] In its brief, the Society states: "If the lower court is upheld in these points, then the wishes of any testator establishing a charitable trust can be nullified by the joint action of one bank officer and one Deputy Attorney General, whose substitute plan for the testator's estate can be whisked through the Orphans' Court . . . without any scrutiny by any person acting on behalf of the charity . . . without notice to any other charity . . . ." Such imputation by the Society finds no justification on this record. The facts of record do not in *any manner* impugn the good faith of the trust officer, the Attorney General or the court below. Such a reckless statement will not be countenanced by this Court.

[12] A bill in equity by a private party to enforce the public duties of a corporation.

Appeal of the Federation

Relying on the agreement of May 11, 1961, between the Attorney General, the Federation and the trustee leading to the Federation's withdrawal of its exceptions, the Federation[13] contends that the Attorney General and the trustee breached this agreement in failing to give notice "to all institutions and organizations of and for the blind" at the time the Society presented its review petition.

It is clear that the citation issued on presentation of the Society's review petition did provide that notice be given to the Federation. While it is not clear from the record whether the Federation was given notice, the fact is that the Federation did appear at the hearing on the petition and indicated its interest in recognition of, and compliance with, the agreement. The Federation now claims this agreement has been breached but we find no justification for such claim. The agreement related only to cy pres proceedings instituted in the future and the Society's review petition did not fall within the category of such described future litigation.

The Federation next contends that the court below erred in refusing to enter an order or decree to enforce the terms of the agreement. No duty rested upon the court to enforce this agreement by the promulgation of an order or decree. The agreement does not so provide; it is an agreement solely between the parties. The fact that such an agreement exists imposes no duty upon the court to embody its terms into an order or decree. If, in future litigation to which it is applicable, notice under the agreement is not given, the matter can then be brought to the attention of the court. The right to notice arises from the agreement not from

[13] No more than the Society is the Federation a party in interest in this proceeding.

any statute or court rule. Were it not for such an agreement, the Federation like the Society would be a stranger to the proceedings.

Decree affirmed. Each party to pay own costs.

Mr. Chief Justice BELL concurs in the result.