426 A.2d 1123

The VALLEY FORGE HISTORICAL SOCIETY, and The Valley
Forge Historical Society on Behalf of the Washington
Memorial, Appellees,

v.

WASHINGTON MEMORIAL CHAPEL and the Rector, Church
Wardens and Vestrymen of the Washington Memorial
Chapel at Valley Forge, Pennsylvania, Appellants.

Supreme Court of Pennsylvania.

Argued Oct. 14, 1980.

Decided March 13, 1981.

John J. O'Brien, Jr., Philadelphia, for appellant.

J. Brooke Aker, Norristown, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

The instant appeal resulted from a decree of the Orphans' Court Division of the Court of Common Pleas of Montgomery County, continuing the preliminary injunction granted on November 8, 1979. The decree of January 10, 1980 continued the preliminary injunction restraining The Washington Memorial Chapel and The Rector, Church Wardens and Vestrymen of The Washington Memorial Chapel at Valley Forge, Pennsylvania ("Chapel") from proceeding in any manner to evict The Valley Forge Historical Society ("Society") from its present quarters in the Washington

Memorial until the petition for declaratory judgment filed by the Society is finally determined, and in any way interfering with the Society's free access to its quarters or that of the public at such reasonable times as the Society determines it should be open to the public.

The Chapel has appealed from this decree, challenging the subject matter jurisdiction of the Orphans' Court, the standing of the Society to petition for declaratory and injunctive relief, and the propriety of granting a preliminary injunction. For the reasons that follow, we affirm the grant of the preliminary injunction.

The Valley Forge Historical Society and the Washington Memorial Chapel have occupied the same buildings at The Washington Memorial since the early part of this century when both the Society and the Chapel were founded by an Episcopal Churchman, Dr. W. Herbert Burk. Since the creation of the Society in 1918, it has maintained its offices and its collection of historical artifacts dating from the colonial and revolutionary periods in the same buildings occupied by the Chapel. The artifacts are displayed in an area of the premises open to the public. The Society also operates a souvenir shop upon the premises.

There is no dispute that title to the entire property is held by the Chapel. The Society, however, claims a right to remain in its present premises based on a trust relationship it contends exists between itself and the Chapel. The Chapel, on the contrary, contends the Society is merely a tenant whose leasehold interest in the premises has expired. It wishes to dispossess the Society so that it may demolish that part of the structure occupied by the Society and engage upon a building project for its own purposes.

In the last two decades, there have been extended negotiations between these parties concerning the relocation of the Society, so that the Chapel's expansion would not be impeded. The negotiations proved unsuccessful. In 1973, the parties entered into a written lease. This lease characterized the parties as landlord (the Chapel) and tenant (the Society), described the premises, and provided for rent and

for other provisions applicable to a landlord-tenant relationship. The Society, however, claims that the lease was entered into only to formalize the basis for sharing operating expenses as requested by the Chapel for the first time in 1973. There was never a written lease prior to 1973, and the Chapel never characterized the relationship between itself and the Society as one of lessor-lessee at anytime prior to 1973.

When the 1973 lease expired two years later, the parties continued the relationship uninterrupted until May of 1979 when the Chapel notified the Society that as of October 1, 1979 it was to remove its offices and artifacts from The Washington Memorial buildings. In response, the Society commenced this action requesting the court below to declare the rights of the parties as to perpetual use and occupancy of the premises and to enjoin the Chapel from interfering with the Society's alleged rights of occupancy. As previously noted, the injunction was granted. This appeal by the Chapel followed.

In the court below and now before us, the Chapel contends the Orphans' Court lacked subject matter jurisdiction over this action. More particularly, the Chapel's argument is that the Society failed to plead facts sufficient to establish a trust, without the existence of which the Orphans' Court cannot entertain this action. The Society's argument, however, is that it has clearly averred the existence of a charitable trust of which the Society is a beneficiary for the housing of the historical collection at The Washington Memorial.

Paragraph 8 of the Society's Petition for Declaratory Judgment and for Injunction states:

8. Respondent The Trustees of the Protestant Episcopal Church of the Diocese of Pennsylvania accepted title to a portion of the premises in question in trust for "religious and patriotic purposes," creating (a) a charitable trust of which the proposed termination of petitioner's right of occupancy constitutes a breach and (b) giving rise to a legally enforceable right in petitioner to perpetual occupancy of the Washington Memorial.

Moreover, during hearings on the injunction, counsel for the Society read into the record language from a deed by which title to part of the property now in question was acquired by the Chapel. The relevant language reads as follows:

> Subject as aforesaid in trust nevertheless for the use of the Rector, Church Wardens and Vestrymen of The Washington Memorial Chapel of Valley Forge for such religious and patriotic purposes as may be designated by the said, The Trustees of the Protestant Episcopal Church, in the Diocese of Pennsylvania, in a deed or declaration of trust to be formulated by said, The Trustees of the Protestant Episcopal Church, in the Diocese of Pennsylvania, in which they shall designate their powers and the method of exercising the same, and the method of choosing their successors.

Accepting as true the Society's allegations that the premises in question were acquired by the Chapel under a deed of trust "for religious and patriotic purposes," we conclude that it was the intent of the grantor to create a charitable trust.

A charitable trust is created only if the settlor manifests an intention to create such a trust. *Restatement of Trusts 2d*, Section 351. "No particular form of words is necessary for the manifestation of intention to create a charitable trust." *Id.*, Comment (b). This Court has found that a charitable trust is created by deed when any intention is declared, either expressly or by implication, that the transferee is under an equitable duty to hold and use the land for a charitable purpose. *Loechel v. School Dist. of Borough of Columbia*, 369 Pa. 132, 136, 85 A.2d 81, 83 (1952); *Abel v. Girard Trust Co.*, 365 Pa. 34, 39, 73 A.2d 682, 684 (1950); *see also, Thompson's Estate*, 282 Pa. 30, 34, 127 A. 446, 448 (1925). Upon examination of the relevant language from the deed, it is clear the settlor intended for the property to be held and used for "religious and patriotic purposes," both proper subjects of a charitable trust. 20 Pa.C.S.A. § 6101; *McClain Estate*, 435 Pa. 408, 257 A.2d 245 (1969); *Funk Estate*, 353 Pa. 321, 45 A.2d 67 (1946).

The existence of a charitable trust negates appellant's argument that the Orphans' Court lacks subject matter jurisdiction over this action. Jurisdiction over *inter vivos* trusts rests with the Orphans' Court Division under the Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 711.

> ... the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> * * * * * *
>
> (3) Inter vivos trusts. The administration and distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts, whether created before or after the effective date of this chapter, except any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such orders the jurisdiction of the trust to be exercised through the orphans' court division.
>
> "Inter vivos trust" means an express trust other than a trust created by will, taking effect during the lifetime or at or after the death of the settlor.

Immediately following this language, the section lists those trusts included under the definition of *inter vivos* trusts and those excluded from the definition. Specifically included is "a trust created under a deed, agreement, or declaration except as hereinafter excluded." 20 Pa.C.S.A. § 711(3)(ii). Those specifically excluded are not relevant to our determination. Manifestly, this alleged trust is an *inter vivos* one, created "other than ... by will," in fact, "created a deed" as required by section 711.[1]

---

1. Appellant, in the alternative, contends that the facts as alleged by the Society *may* permit a court to find a constructive or resulting trust in favor of the Society, but that the Orphans' Court is without jurisdiction to make such a determination. The Society averred in its petition that since the founding of the Chapel and the Society, the Chapel had solicited and accepted contributions for the joint use of the parties, and that such representations and co-mingling gave rise to a charitable trust. However, appellant argues, constructive or resulting trusts are specifically excluded from the definition of *inter vivos* trusts and, therefore, from the jurisdiction of the Orphans'

Appellant next contends that even if the deed is said to have created a charitable trust, the Society lacks standing to maintain the action for declaratory and injunctive relief. We do not agree.

■ An action for the enforcement of a charitable trust can be maintained by the Attorney General, a member of the charitable organization or someone having a special interest in the trust. *Miller Estate*, 380 Pa. 172, 179, 110 A.2d 200, 203 (1955); *Wiegand v. Barnes Foundation*, 374 Pa. 149, 153, 97 A.2d 81, 82 (1953); *Restatement of Trusts 2d*, § 391. A person whose only interest in compelling a charitable organization to perform a duty owed by that organization to the public is that interest held in common with other members of the public, cannot compel the performance of a duty owed by the organization to the public. *Wiegand v. Barnes Foundation, supra*, 374 Pa. at 153, 97 A.2d at 82.

In the instant case, the Attorney General, after being given notice of the litigation as required by Pennsylvania law, informed counsel for the Society that his office would not actively participate. Enforcement of the duty owed by the Chapel, to use the property in question for "religious and patriotic purposes," was therefore left to enforce by either a member of the charitable organization or by someone having a special interest in the trust. We agree with appellant that the Society has neither pleaded nor established facts which would designate it as a member of the charitable organization. Under the theory of a charitable trust for the benefit of the public generally, appellees would not be designated charitable organization; thus they must satisfy the standing requirement by demonstrating a special interest in the trust. We are not in accord with appellant's argument that the Society has no special interest in the trust.

Court. Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 711(3)(vi). If appellants are successful in establishing the grantor's intent to create a charitable trust, we need not reach the issue of whether a constructive or resulting trust exists by virtue of the alleged solicitation and acceptance of funds for the joint use of the parties.

As previously noted, the relationship between the Chapel and the Society has been a close and, in the past, a cordial one. It was the intent of the founder of both organizations that each aid in the development of patriotism, one along the lines of religion, the other along those of education. The record shows that on several occasions the Society contributed substantial amounts of money for the enlargement of the Chapel. The Valley Forge Museum of American History, the original appellation of the Society, by its origins, its very real link to The Washington Memorial, and its professed purpose has that special interest which distinguishes it from any other historical society not designated by the trust instrument. *See, e. g., Nevil Estate*, 414 Pa. 122, 199 A.2d 419 (1964).[2] Moreover, the rationale for barring a member of the general public from enforcing a duty owed by a charitable organization is not applicable to the instant controversy. The purpose of this restrictive rule is to protect the trustees from frequent suits perhaps based on cursory investigation and brought by irresponsible parties. *Nevil Estate, supra*, 414 Pa. at 129, 199 A.2d at 423; *Scott on Trusts*, § 414, p. 436 (Rev'd 2d Ed. 1977). Such is not the case here.

The Chapel's final argument is that the Society failed to establish the existence of the essential prerequisites to the issuance and maintenance of a preliminary injunction.

2. In *Nevil Estate, supra*, the Society for the Advancement of the Deaf filed a petition to review a final decree of the Orphans' Court approving a partial distribution of funds to certain institutions for the blind and the deaf from a charitable trust. The Attorney General, *inter alia*, questioned the standing of the Society for the Advancement of the Deaf to present the review petition. On appeal, this Court found the Society, as an agency devoted to aiding the deaf generally, had no legally recognized private interest in the disposition of the fund and was, therefore, not a proper party to appeal from a decree in a charitable trust proceeding. The Society for the Advancement of the Deaf, had no interest different in kind from that of the public generally. We believe a marked difference exists between the position of the Society in *Nevil Estate* and the Society in the present case. The Valley Forge Historical Society is not an institution which merely hopes to be a beneficiary of a charitable trust. Rather, its interest is a real and distinct one arising from the special circumstances of its creation and relationship with the Chapel.

The standard of review on appeal from the grant of preliminary injunction has been repeatedly set forth by this Court:

'The scope of review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of te court below . . .' *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell*, 392 Pa. 313, 140 A.2d 789 (1958). *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963).

*New Castle Orthopedic Assoc. v. Burns*, 481 Pa. 460, 463–64, 392 A.2d 1383, 1385 (1978) *citing John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977).

With this standard in mind, we review the action of the court below:

The essential prerequisites for issuance of a preliminary injunction have been set forth as follows:

. . . first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp., supra.* Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded. *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958).

*John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977), *citing Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 181, 207 A.2d 768, 770 (1965).

Addressing the prerequisites *seriatim,* appellant first contends the Society failed to show denial of the preliminary injunction would cause it immediate and irreparable harm not compensable by damages. Upon review of the record we find the lower court had reasonable grounds for its action. Although appellant challenges the authenticity, value and quantity of the artifacts currently for public viewing at the museum, it is clear that removal and storage of these artifacts could expose them to risk of loss or destruction.

Secondly, according to appellant, there has been no showing by the Society that greater injury will result by refusing rather than granting the preliminary injunction. Again we note the risk of loss and destruction inherent in removing and storing historical artifacts. Moreover, as appellee appropriately argues, the harm to the public must also be considered. *See McMullan v. Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971) (where an adverse effect upon the public will result from the issuance of a preliminary injunction, it should not be granted). Denial of the preliminary injunction here would have interfered with the public's interest to view artifacts which are part of its historical heritage, particularly in their intended and natural setting—Valley Forge.

The Chapel further claims the injunction does not restore the parties to the status existing immediately prior to the alleged wrongful conduct. The status quo to be maintained by a preliminary injunction is the last actual, peaceable and lawful noncontested status which preceded the pending controversy. *Commonwealth v. Coward,* 489 Pa. 327, 341, 414 A.2d 91, 99 (1980). There is no question that the presence of the Society on the premises up to May 1979 was lawful. Appellee has occupied the premises since the early part of the twentieth century. Whether its occupancy since May 1979 is lawful is the very heart of the matter pending in the lower court. Plainly stated, the court

below must determine the legality of appellant's eviction notice in 1979. Thus it was proper that an injunction issue in order to preserve the status quo pending a decision on the merits.

Finally, appellant argues the Society failed to establish a clear right to the relief requested. Appellant reviews the arguments in support of the assertion that the Society has failed to prove any right of perpetual occupancy to the real property in question and concludes that the Society's failure to establish that it is the beneficiary of the charitable trust precludes it from obtaining injunctive relief. Appellant is correct in asserting that speculative considerations cannot form the basis for issuing a preliminary injunction. However, where, as in the present case, the status quo sought to be altered has continued undisturbed for more than sixty years, the merits of the litigation cannot be reached until completion of discovery and full hearing, it is not clear that the petitioner's claim is purely speculative and the three prongs of the test for issuance of a preliminary injunction have been satisfied, it is unreasonable to deny injunctive relief pending a definitive ruling on the merits. The grant of a preliminary injunction is proper and will not be disturbed.

LARSEN, J., dissents.